# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TRISCHA C. MALLORY,<br><br>                         Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,[1]<br>Acting Commissioner of Social Security,<br><br>                         Defendant. | Case No. 2:21-cv-00663-CLB<br><br>**ORDER DENYING MOTION TO REMAND AND GRANTING CROSS-MOTION TO AFFIRM**<br><br>[ECF Nos. 21, 22] |

This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Trischa C. Mallory's ("Mallory") application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. Currently pending before the Court is Mallory's motion for reversal and remand. (ECF No. 21.) The Commissioner filed a response and cross-motion to affirm, (ECF Nos. 22, 23)[2], and Mallory filed a reply, (ECF No. 24). Having reviewed the pleadings, transcripts, and the Administrative Record ("AR"), (ECF No. 15), the Court concludes that the Commissioner's finding that Mallory could perform other work that exists in significant numbers in the national economy was supported by substantial evidence. Therefore, the Court denies Mallory's motion for remand, (ECF No. 21), and grants the Commissioner's cross-motion to affirm, (ECF No. 22).

///

///

///

---

[1]   Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2]   ECF Nos. 22 and 23 are identical documents.

**I.   STANDARDS OF REVIEW**

**A.   Judicial Standard of Review**

This court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the court must look at the administrative record as a whole, weighing both the evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

"However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza,* 50 F.3d at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if substantial evidence supports the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

### B.     Standards Applicable to Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of their claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform their prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to

the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits the individual from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. To the extent that objective medical evidence does not substantiate statements about the

intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

After making the RFC determination, the ALJ must then turn to step four to determine whether the individual has the RFC to perform their past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform their past work, then a finding of not disabled is made. If the individual is unable to perform any past relevant work or does not have any past relevant work, then the analysis proceeds to the fifth and final step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering their RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the individual is able to do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

## II.     CASE BACKGROUND

### A.     Procedural History

Mallory applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") on October 6, 2017, with an alleged disability onset date of December 31, 2009. (AR 326-33.) Mallory's application was denied initially on June 11, 2018, and upon

reconsideration on December 11, 2018. (AR 156-57, 198-99.) Mallory subsequently requested an administrative hearing and on July 15, 2020, Mallory and her attorney appeared at a telephonic hearing before an ALJ. (AR 49-114.) A vocational expert ("VE"), medical expert, and psychological expert also appeared at the hearing via telephone. (*Id.*) The ALJ issued a written decision on September 2, 2020, finding that Mallory was not disabled because she could perform other work that exists in significant numbers in the national economy. (AR 17-48.) Mallory appealed, and the Appeals Council denied review. (AR 1-6.) Accordingly, the ALJ's decision became the final decision of the Commissioner. Having exhausted all administrative remedies, Mallory filed a complaint for judicial review on April 22, 2021. (*See* ECF Nos. 1-1, 5)

**B.     ALJ's Decision**

In the written decision, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 20-37.) Ultimately, the ALJ disagreed that Mallory has been disabled from December 31, 2009, the alleged onset date, through the date of his decision. (AR 37.) The ALJ held that, based on Mallory's RFC, age, education, and work experience, Mallory could perform other work that exists in significant numbers in the national economy. (AR 35-36.)

In making this determination, the ALJ started at step one. Here, the ALJ found Mallory had not engaged in substantial gainful activity since the alleged onset date of December 31, 2009. (AR 23.) At step two, the ALJ found Mallory had the following severe impairments: disorder of the cervical and lumbar spine, carpal tunnel syndrome, bipolar disorder, affective/mood disorder, anxiety-related disorder, Sjogren's syndrome, and fibromyalgia. (AR 26.) At step three, the ALJ found Mallory did not have an impairment or combination of impairments that either met or medically equaled the severity of those impairments listed in 20 C.F.R. Part 404, Subpart P, Appx. 1; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (AR 24-26.)

Next, the ALJ determined Mallory has the RFC to perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b) except:

> [s]he can perform posturals occasionally except that she must never climb ladders, ropes, or scaffolds; she must avoid concentrated exposure to hazards such as hazardous machinery, unprotected, and operational control of moving machinery; she is limited [to] simple tasks typical of unskilled occupations with no production rate pace work, only occasional interaction with supervisors and coworkers and no interaction with the public; and finally, she can frequently but not continuously finger and handle objects bilaterally.

(AR 26.)

The ALJ found Mallory's medically determinable impairments could reasonably be expected to cause the symptoms alleged; however, Mallory's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 27.) In reaching this conclusion, the ALJ reviewed and discussed the objective medical evidence, medical opinions, and factors weighing against Mallory's credibility. (AR 26-35.) The ALJ then determined that Mallory is not capable of performing past relevant work, as a cocktail waitress, as actually, or generally, performed. (AR 35.)

Relying on the testimony of the VE, the ALJ determined Mallory's age, education, work experience, and RFC would allow her to perform other occupations existing in significant numbers in the national economy, such as: marker, garment bagger, power screwdriver operator, document preparer, or nut sorter. (AR 35-36.) Accordingly, the ALJ held Mallory had not been under a disability since the alleged onset date of December 31, 2009, through the date of the decision, and denied Mallory's claim. (AR 37.)

### III.   ISSUE

Mallory seeks judicial review of the Commissioner's final decision denying DIB and SSI under Titles II and XVI of the Social Security Act. (ECF No. 21.) Mallory raises the following issues for this Court's review:

1. Whether the ALJ properly evaluated the opinions of treating therapist Saul Randall, and clinical psychologist David G. Harmon, in determining Mallory's mental RFC; and

2. Whether the ALJ properly evaluated the opinions of treating physician Nouhad Damaj, and treating neurologist Arlyn Valencia, in determining Mallory's physical RFC.

7

(*Id.* at 7-23.)

## IV.    DISCUSSION

Within the administrative record, an ALJ may encounter medical opinions from three types of physicians: treating, examining, and non-examining. *See Valentine v. Comm'r of Soc. Sec. Admin*., 574 F.3d 685, 692 (9th Cir. 2009). For claims filed *on or after* March 27, 2017, no deference or specific evidentiary weight, including controlling weight, will be given to any medical opinions or prior administrative medical findings, including those from a plaintiff's medical sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). When evaluating the persuasiveness of medical opinions and prior administrative medical findings, the most important factors considered are *supportability* and *consistency*. *Id.* (emphasis added). When a finding is made on persuasiveness, there must be an explanation of how the ALJ considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings within the determination or decision. *Id.; see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support their medical opinions or prior administrative medical findings, the more persuasive the medical opinions or prior administrative medical findings will be. *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The more consistent a medical opinion or prior administrative medical finding is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion or prior administrative medical finding will be. *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ will consider the following additional factors when evaluating the persuasiveness of medical opinions and prior administrative medical findings, however, the ALJ is not required to explain how the factors were considered:

(1) relationship of the claimant with the medical source:
    (i) length of the treatment relationship,
    (ii) frequency of examinations,
    (iii) purpose of the treatment relationship,
    (iv) extent of the treatment relationship, and
    (v) examining relationship;

(2) specialization of the medical source providing the opinions or findings; and
(3) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *Id.* at §§ 404.1520c(c)(3)-(5), 416.920c(c)(3)-(5).

When an ALJ finds two or more equally persuasive medical opinions or prior administrative medical findings about the same issue that are equally well-supported and consistent with the record, but are not exactly the same, then the ALJ must articulate, within the claimant's determination or decision, how the ALJ considered the other most persuasive factors for those medical opinions or prior administrative medical findings. *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

Mallory filed her claims for DIB and SSI in October of 2017. (AR 326-33.) For this reason, the ALJ was required to follow 20 C.F.R. §§ 404.1520c and 416.920c when considering and articulating how the ALJ considered medical opinions or prior administrative medical findings. To evaluate whether the ALJ properly assessed Mallory's physical and mental limitations in determining her RFC, the Court will look for whether the ALJ applied the proper legal standards under 20 C.F.R. §§ 404.1520c and 416.920c and, whether there was substantial evidence in the record to support the ALJ's decision.

### A.   There is Substantial Evidence in the Record to Support the ALJ's Decision regarding Mallory's Mental RFC

Mallory first argues the ALJ erred when determining Mallory's mental RFC because he failed to properly evaluate the opinions of treating therapist, Saul Randall, MS CPC; NCC and clinical psychologist, Dr. David G. Jarmon, Ph.D. (ECF No. 21 at 7-17.) Mallory asserts that Randall opined Mallory "would have marked limitations in her ability to sequence multi-step activities, in her ability to avoid distractions while working, and in her ability to handle conflicts with others, in her ability to understand and respond to social cues." (*Id.* at 10, citing AR 1466-68.) Mallory also asserts Jarmon similarly opined that Mallory "would have marked limitations in her ability to interact with others and in her ability to maintain concentration, persistence and pace." (*Id.*, citing AR 70.) Mallory argues the ALJ rejected the opinions of Randall and Jarmon "contending they were inconsistent with the record which demonstrated an absence of suicidal ideations, intact cognitive function,

and fair to good insight and judgment. [AR 34.] However, the ALJ has failed to explain why a lack of suicidal ideation, for example, in any way detracts from the limitations identified by [Mallory's] therapist or the agency's own consultative examiner." (*Id.* at 10-11.)

As an initial matter, the Court finds the ALJ applied the proper legal standards under 20 C.F.R. §§ 404.1520c and 416.920c, as he appropriately assessed the supportability and consistency of both opinions as the regulations dictate, including providing an explanation of how the supportability and consistency factors were considered when assessing Randall and Jarmon's medical opinions.

As to Mallory's mental limitations, the ALJ specifically found that Mallory "is limited [to] simple tasks typical of unskilled occupations with no production rate pace work, only occasional interaction with supervisors and coworkers and no interaction with the public." (AR 26.) In considering the opinions of Randall and Jarmon, the ALJ found as follows:

> I have considered a mental assessment by a provider [Randall], dated January 5, 2018, and finds the assessment partially persuasive. The assessment indicates mostly mild and moderate limitations, which is supported and consistent with the record. For example, findings of pressured speech, abnormal mood and affect, and racing thoughts, supports moderate limitations. However, the assessment indicates the claimant had marked limitations in four out of 22 categories, involving the ability to sequence multi-step activities, the ability to ignore or avoid distractions while working, the ability to handle conflicts with others, and the ability to understand and respond to social cues (Ex. 29F), which is not supported or consistent with other findings such as the absence of suicidal ideations and hallucinations coupled with intact cognitive function, and fair to good insight and judgement. Thus, I am partially persuaded by this assessment as mild to moderate restrictions are reasonably supported and consistent with the record, though marked restrictions are not.

(AR 34.)

> I find the opinion of the testifying psychological expert, Dr. Jarmon, not persuasive after considering factors of supportability and consistency. Dr. Jarmon testified the claimant's medically determinable impairment included bipolar disorder, which Dr. Jarmon found met Listing 12.04(A)(2) and results in moderate limitation in understanding, remembering, and applying information and in adapting and managing herself and marked limitations in interacting with others and in maintaining concentration, persistence, and pace. Dr. Jarmon indicated that, assuming no listing was met, the claimant would have the following restrictions: unable to perform simple repetitive

>work tasks; occasional interaction with supervisors and coworkers; and preclusion from interacting with the public. In support of the assessment, Dr. Jarmon indicated the claimant had manic behavior, difficulty maintaining train of thought, irritability and frustration, difficulty sleeping; pressured speech, and tendency to jump around. Dr. Jarmon's assessment is not supported, as such findings by themselves do not suggest marked limitations are that a listing is met. Additionally, Dr. Jarmon appears to have relied, in part, on the claimant's subjective reports. Dr. Jarmon's opinion is also not consistent with other evidence. For example, as mentioned, the absence of suicidal ideations and hallucinations coupled with intact cognitive function, and fair to good insight and judgement, suggests the claimant's limitations are, at most, moderate I am not persuaded by Dr. Jarmon's opinion as it is not supported and not consistent.

(*Id.*)

In determining Mallory's mental RFC, the ALJ provided a thorough review of the record including medical evidence and subjective testimony regarding Mallory's mental impairments, noting evidence that supported limitations and evidence that contradicted disabling allegations. (AR 32-35.) The ALJ noted that mental status examinations regularly showed intact cognitive function, fair to good insight, and fair to good judgment. (AR 34.) The ALJ's thorough review of the evidence identified such normal findings in mental status examinations throughout the record. (AR 32-33 (citing AR 1729, 2282, 2203, 2205, 2232, 2282, 2327-29.)) Additionally, the ALJ did not reject Randall and Jarmon's opinions simply because Mallory did not report hallucinations or suicidal ideation, but the ALJ again specifically noted that Mallory's intact cognitive function and fair to good insight and judgment did not warrant additional restrictions. (AR 33.) To the extent Mallory claims the evidence is consistent with the marked limitations in these opinions based on an alternate interpretation of the evidence, the ALJ's rational interpretation must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

In sum, the ALJ properly considered all the relevant evidence in determining Mallory's mental limitations, including complete assessments of the opinions of Randall and Jarmon following the criteria articulated in the regulations. (AR 26-35.) The ALJ reasonably found Randall's opinion to be partially persuasive and Jarmon's opinion to be

not persuasive. (AR 34.) The ALJ's thorough evaluation of the supportability and consistency of these opinions supports the ALJ's conclusions as to Mallory's mental RFC.

For the above reasons, the Court finds that the ALJ's mental RFC finding is supported by substantial evidence.

**B.  There is Substantial Evidence in the Record to Support the ALJ's Decision regarding Mallory's Physical RFC**

Mallory next argues the ALJ erred when determining Mallory's physical RFC because he improperly rejected the opinions of treating physician Dr. Nouhad Damaj and treating neurologist Dr. Arlyn Valencia. (ECF No. 21 at 17-23.) Mallory contends the ALJ improperly rejected these opinions in a conclusory manner as he stated neither opinion was supported by the record as a whole, "[a]s discussed in detail above." (*Id.* at 18-19.) Mallory contends that the ALJ was "obliged to measure the persuasiveness of an opinion" but failed to do so. (*Id.* at 22.)

As an initial matter, the Court again finds the ALJ applied the proper legal standards under 20 C.F.R. §§ 404.1520c and 416.920c, as he appropriately assessed the supportability and consistency of both opinions as the regulations dictate, including providing an explanation of how the supportability and consistency factors were considered when assessing Damaj and Valencia's medical opinions.

As to Mallory's physical limitations, the ALJ specifically found that Mallory had the ability to perform light work except "[s]he can perform posturals occasionally except that she must never climb ladders, ropes, or scaffolds; she must avoid concentrated exposure to hazards such as hazardous machinery, unprotected, and operational control of moving machinery … she can frequently but not continuously finger and handle objects bilaterally." (AR 26.) In considering the opinions of Damaj and Valencia, the ALJ found as follows:

> I am not persuaded by an opinion dated February 19, 2018, by a physician [Damaj]. The physician assessed the following restrictions: lifting and carrying less than 10 pounds occasionally; sitting up to one hour; walking up to two hours; reaching less than five percent of the day and grasping, turning, twisting object, and fine manipulation with up to five percent of the day with the right upper extremity; reaching less than 10 percent of the day and grasping, turning, twisting object, and fine manipulation with up to 10 percent

of the day with the left upper extremity; and an absence of four or more times per month. The physician merely noted degenerative disc disease (Ex. 34F) and did not provide sufficient support for such extreme limitations. Additionally, the assessment is not consistent with the record as a whole. As discussed in detail above, findings of degenerative disc disease, decreased range of motion and positive facet loading at times but also generally normal gait, stance, and balance, the claimant supports a range of light exertional limitations and NCV study results support light, climbing, hazard, and frequent bilateral fingering and handling restrictions. Such findings are not consistent with the restrictions assessed by this physician. Thus, I am not persuaded by this assessment, as it is not supported or consistent.

(AR 31.)

Similarly, I am not persuaded by a physical assessment by Arlyn Valencia, M.D., dated July 6, 2020. Dr. Valencia assessed the following limitations: an expected absenteeism more than four days of work per month; walking less than a bloc; sitting a total of two hours in an August work day; standing a total of one hour in an eight-hour workday; the need for a 30-minute break every hours; lifting and carrying less than 10 pounds occasionally; use of the right upper extremity for gasping, turning, twisting, fine manipulation, and reaching 15 percent of the time in an eight-hour workday; use of the left upper extremity for gasping, turning, twisting, fine manipulation, and reaching 20 percent of the time in an eight-hour workday (Ex. 93F). As with the abovediscussed assessment, Dr. Valencia's assessment is not supported or consistent. Findings of degenerative disc disease, decreased range of motion and positive facet loading at times but also generally normal gait, stance, and balance, the claimant supports a range of light exertional limitations and NCV study results support light, climbing, hazard, and frequent bilateral fingering and handling restrictions. However, they are not consistent with the extreme limitations assessed by Dr. Valencia. Additionally, Dr. Schmitter, whose opinion is discussed below, disagreed with Dr. Valencia's opinion. Thus, I am not persuaded by this assessment, as it is not supported or consistent.

(AR 31-32.)

In determining Mallory's physical RFC, the ALJ provided a thorough review of the record including medical evidence and subjective testimony regarding Mallory's physical impairments, noting evidence that supported limitations and evidence that contradicted disabling allegations. (AR 26-32.) The ALJ reasoned that the findings of generally normal gait, stance, and balance supported a range of light exertional limitations and the nerve conduction study results supported light exertion with limitation to climbing and exposure to hazards and frequent handling and fingering. (AR 31-32.) The ALJ's thorough review of

the evidence identified normal gait and intact sensation throughout the record. (*Id.*) Additionally, the ALJ did not provide conclusory reasons for rejecting Damaj and Valencia's opinions, but rather the ALJ provided a thorough explanation of the inconsistency of Damaj's and Valencia's opinions to the remainder of the evidence and provided specific reasons for finding these opinions inconsistent.

In sum, the ALJ properly considered all the relevant evidence in determining Mallory's physical limitations, including complete assessments of the opinions of Damaj and Valencia following the criteria articulated in the regulations. (AR 26-35.) The ALJ reasonably found Damaj and Valencia's opinions to be not persuasive. (AR 31.) The ALJ's thorough evaluation of the supportability and consistency of these opinions supports the ALJ's conclusions as to Mallory's physical RFC.

For the above reasons, the Court finds that the ALJ's physical RFC finding is supported by substantial evidence.

**V.     CONCLUSION**

Having reviewed the Administrative Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's conclusion, the Court finds the ALJ's decision was supported by substantial evidence and is free of legal error.

Accordingly, **IT IS THEREFORE ORDERED** that Mallory's motion to remand (ECF No. 21) is **DENIED**, and the Commissioner's cross-motion to affirm (ECF No. 22) is **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk **ENTER JUDGMENT** and **CLOSE THIS CASE**.

**DATED**: May 23, 2022

_____
**UNITED STATES MAGISTRATE JUDGE**